O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUARDO FERRER GUIYAB, | ) Case No. EDCV 12-00986-OP |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION AND |
| MICHAEL J. ASTRUE, | ) ORDER |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

/ / /

/ / /

/ / /

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (ECF Nos. 7, 8.)

[2] As the Court advised the parties in its Case Management Order, the decision in this case is made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g). (ECF No. 4 at 3.)

1

## I.
## **DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues raised by Plaintiff as the grounds for reversal and/or remand are as follows:

(1) Whether the ALJ properly considered the relevant medical evidence of record; and

(2) Whether the ALJ properly evaluated Plaintiff's credibility.

(JS at 3.)

## II.
## **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

## III.
## **DISCUSSION**

**A.   The ALJ's Findings.**

The ALJ found that the sixty-one year old Plaintiff had the severe

impairments of gout; history of colon cancer; and chronic kidney disease, stage 3. (Administrative Record ("AR") at 13.)  The ALJ also found that Plaintiff had the non-severe impairments of dyslipidemia, pre-diabetes, hypertension, and tennis elbow.  (Id.)  The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform less than the full range of medium work with the following limitations:  lift and/or carry twenty-five pounds frequently and fifty pounds occasionally; stand and/or walk six hours in an eight-hour workday; frequent pushing, pulling, and forceful twisting with the upper right extremity; and frequent postural activities.  (Id.)

Relying on the testimony of the vocational expert ("VE"), the ALJ determined that Plaintiff was able to perform his past relevant work as an export/import coordinator (Dictionary of Occupational Titles ("DOT") No. 185.157-018) as actually and generally performed.  (Id. at 18.)  The ALJ made the alternative findings that Plaintiff could perform the requirements of other occupations such as dry-clean worker (DOT No. 361.687-018), hand packer (DOT No. 920.587-018), and cleaner (DOT No. 381.687-018.  (AR at 19.)

**B.     The ALJ Properly Considered and Weighed the Medical Evidence.**

Plaintiff contends that the ALJ failed to properly consider the relevant medical evidence of record regarding the totality of Plaintiff's impairments, including his right dominant upper extremity limitations, as well as his frequent urination problem, which significantly impact Plaintiff's ability to sustain employment at his past relevant work.  (JS at 4, 8-9.)

Specifically, Plaintiff argues that the ALJ's limitation to frequent pushing/pulling and forceful twisting with the right upper extremity indicates that the right elbow impairment should have been deemed a severe condition by virtue of the Social Security Administration's own definition.  (Id. at 4-5.)  Plaintiff also contends that the orthopedic consultative examiner's report, relied upon by the ALJ in determining Plaintiff's RFC, is inherently defective, as the examiner

admitted he had reviewed none of Plaintiff's medical records, and such review is necessary to understand the totality of Plaintiff's impairments. (Id. at 5.) Additionally, Plaintiff contends that the consultative orthopedic examiner's failure to review any medical evidence of record documenting Plaintiff's physical impairments, symptoms, and limitations constitutes a defective report, and the ALJ erred in relying on this "defective" consultative examination report. (Id. at 4-7.) Plaintiff also contends that his problems would have been more properly assessed by an internal medicine specialist. (Id.) Finally, Plaintiff states that the ALJ's failure to consider Plaintiff's need to use the restroom "approximately every hour during the day," and his acknowledgment that Plaintiff has the severe impairment of chronic kidney disease, stage 3, constitutes reversible error, "given the vocational expert testimony regarding the impact of this problem on Plaintiff's ability to maintain employment." (Id. at 8.)

### 1. **Applicable Law.**

The ALJ is responsible for considering the medical evidence of record in making a determination of disability. 20 C.F.R. §§ 404.1512(d), (e), 404.1527, 404.1545(a)(3) (2012). However, the ALJ is not required to "discuss every piece of evidence" so long as the decision was supported by substantial evidence. Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003). Rather, the ALJ need only explain why "significant probative evidence has been rejected." Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393 (9th Cir. 1984); see also Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999) ("The ALJ must set out in the record his reasoning and the evidentiary support for his interpretation of the medical evidence.").

It is well-established in the Ninth Circuit that the reports of consultative experts may serve as substantial evidence. Magallanes v. Bowen, 881 F.2d 747, 752 (9th Cir. 1989). An expert's opinion should not be second-guessed by "burdensome procedural requirements." Id. at 753 (quoting Allen v. Heckler, 749

F.2d 577, 580 (9th Cir. 1984)). An examining expert's uncontroverted opinion may be rejected only for "clear and convincing" reasons. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008). If the examining expert's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are supported by substantial evidence in the record. Id. The ALJ does not have to accept the opinion of any expert that is inadequately supported by the medical record. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009).

## 2. The ALJ Properly Considered Limitations Due to Plaintiff's Upper Extremity Impairment.

The ALJ properly considered the record with regard to Plaintiff's right elbow impairment. Contrary to Plaintiff's contention that the ALJ's limitation to frequent pushing, pulling, and forceful twisting with the right upper extremity in and of itself demonstrates the impairment was severe, in accordance with the regulations, the ALJ's RFC properly considered Plaintiff's limitation and took it into account in determining Plaintiff's RFC even though he did *not* deem it to be severe. Soc. Sec. Ruling 96-8p ("[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'").[3]

---

[3] Ruling 96-8p continues:
While a "not severe" impairment[] standing alone may not significantly limit an individual's ability to do basic work activities, it may- -when considered with limitations or restrictions due to other impairments- - be critical to the outcome of the claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

5

### 3. **The Consultative Examiner.**

Plaintiff testified that his elbow problem began approximately in December 2010. (AR at 158, 159.) He also testified that he was unable to work due in part to his elbow pain (id. at 32), which at times even prevents him from lifting a mug of coffee (id. at 38.) He also stated he could lift about seven pounds at the time of the hearing (id. at 39), but not a gallon of milk (id. at 40), and that he had lost his grip strength (id.). Plaintiff contends that "given the chronic and severe nature" of his right elbow impairment, "he is limited to at most occasional use of his right dominant upper extremity for gross and fine manipulation which according to the vocational expert would preclude the performance of his past relevant work." (JS at 7 (citing AR at 56).)

On January 26, 2011, Plaintiff's treating physician at Kaiser diagnosed tendonitis of the elbow. (Id. at 256.) After that date, Plaintiff's treatment records from Kaiser do not seem to mention any elbow complaints or any treatment for tendonitis.[4] (Id. at 277-338, 387-90; see also id. at 360-63 (consulting physician's record review).) In fact, musculoskeletal physical examinations on two different visits to Kaiser showed "normal range of motion." (Id. at 316, 320.)

On April 5, 2011, Plaintiff was examined by a consultative orthopedist. (Id. at 339-42.) Plaintiff reported that his chief complaint was "Right elbow pain." (Id. at 339.) The orthopedist found that Plaintiff's shoulders, elbows, wrists, and hands all were at "full unrestricted motion." (Id. at 341.) The ortopedist found "no definite tenderness" in the right elbow and noted that "[f]orceful supination and pronation of both arms did not cause [Plaintiff] to have any pain." (Id.) Based on this examination, the orthopedist found that Plaintiff could "push, pull,

---

[4] The Court notes that on December 6, 2011, Plaintiff's treating physician submitted a letter certifying that Plaintiff had the diagnoses of "Chronic Kidney Dissease, hype[r]tension, gout, tennis elbow, back pain and pre-diabetes." (Id. at 390.)

lift, and carry 50 pounds occasionally and 25 pounds frequently. . . . Use of the right hand for gross manipulation requiring him to do forceful twisting, pushing, and pulling, is restricted to frequent basis due to the lateral epicondylitis." (Id. at 341-42.)

Plaintiff generally complains that the orthopedic consultant's report should not have been relied on by the ALJ because the examiner did not review any of Plaintiff's other medical records, and it is not possible for that expert to render an opinion without considering and understanding the totality of Plaintiff's impairments. (JS at 5-6.) Plaintiff also implies that the State agency consultant's limitation to frequent operation of hand controls and frequent "[h]andling (gross manipulation" with the right upper extremity somehow conflicts with the consultative examiner's findings. (Id. at 6.) The Court disagrees with both contentions.

Although the orthopedic consultant did not have Plaintiff's medical records, Plaintiff adequately reported his history of illness (including high blood pressure, diabetes, gout, high cholesterol, kidney problems, tennis elbow, and colon and rectal problems). (AR at 339.) He also reported his medications and noted that he cannot take some medications due to his "severe kidney problems." (Id.) As a result, the examining physician basically obtained the same information from Plaintiff that he would have received from the records. In fact, had the examiner actually reviewed the records, he might also have noted the dearth of records concerning the alleged elbow impairment. As it was, he gave Plaintiff some benefit of the doubt regarding his alleged limitations.

Moreover, as noted by the ALJ, there is little difference between the findings of the orthopedic consultant and the State agency consultant's findings (that Plaintiff could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently, and be limited to frequent operation of hand controls and handling with the right upper extremity), and to which the ALJ also gave great

weight. (Id. at 17-18.) Even if these findings were qualitatively different, which the Court does not find, the ALJ is entitled to resolve any conflicts in the record. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (it is solely the province of the ALJ to resolve conflicts in the record); see also Thomas v. Barnhart, 278 F.3d 947, 956-57 (9th Cir. 2002) (when there is conflicting medical evidence, the ALJ must determine credibility and resolve the conflict) (citation omitted).

Finally, although Plaintiff contends he would have more properly been examined by a consultative internal medicine specialist, the Court notes that the orthopedist was the most qualified to assess Plaintiff's elbow complaints. Moreover, although there was no internal medicine consultant, the ALJ nevertheless determined that Plaintiff had the severe impairments of gout, history of colon cancer, and chronic kidney disease, based on the records of Plaintiff's treating physicians. Thus, no internal medicine specialist was necessary.

### 4. Plaintiff's Polyuria.

Plaintiff contends that the ALJ's failure to consider Plaintiff's need to use the restroom "approximately every hour during the day," and his acknowledgment that Plaintiff has the severe impairment of chronic kidney disease, stage 3, constitutes reversible error, "given the vocational expert testimony regarding the impact of this problem on Plaintiff's ability to maintain employment." (JS at 8.) Specifically, Plaintiff contends that "[a]ccording to the vocational expert, if Plaintiff needed to utilize the restroom during the work day every hour, this would be at the outer limits of what would be considered acceptable by employers (AR55), and that it would be a problem if he had to put calls on hold while on the job so that he could use the restroom (AR56)." (JS at 8.)

Plaintiff's medical records reflect that he experiences nocturia/frequent nighttime urination about every 1.5 hours nightly. (AR at 286.) On December 6, 2011, Plaintiff's treating physician also confirmed that Plaintiff suffers from polyuria/excessive or frequent urination. (Id. at 390.) At the hearing, the VE

testified that a restroom break every hour (the frequency Plaintiff testified to (see id. at 48) would be "at the outer limit of reasonable," but nevertheless concluded that Plaintiff would still be able to perform his previous work. (Id. at 52-53, 55.) Thus, any error by the ALJ in failing to assess an hourly restroom break limitation in the RFC was harmless. Carmickle, 533 F.3d at 1162 (harmless error rule applies to review of administrative decisions regarding disability).

Based on the foregoing, the Court finds that there was no error.

**C. The ALJ Properly Considered Plaintiff's Subjective Complaints and Properly Assessed Plaintiff's Credibility.**

Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for rejecting Plaintiff's subjective complaints because the ALJ failed to specify which statements made by Plaintiff were "not sufficiently credible." (JS at 15 (internal quotation marks omitted).) Plaintiff also contends that the ALJ could not solely rely on a lack of objective medical evidence to reject credibility, and generally failed to provide clear and convincing reasons for rejecting Plaintiff's testimony. (Id.) Finally, Plaintiff argues that the ALJ committed reversible error by failing to properly consider the totality of Plaintiff's subjective complaints. (Id. at 16.) The Court disagrees with Plaintiff's contentions.

### 1. Legal Standard.

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). When, as here, an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny benefits, the ALJ must make explicit credibility findings. Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981); see also Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit finding that claimant was not credible is insufficient).

Once a claimant has presented medical evidence of an underlying

impairment which could reasonably be expected to cause the symptoms alleged, the ALJ may only discredit the claimant's testimony regarding subjective pain by providing specific, clear, and convincing reasons for doing so. Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  An ALJ's credibility finding must be properly supported by the record and sufficiently specific to ensure a reviewing court that the ALJ did not arbitrarily reject a claimant's subjective testimony. Bunnell v. Sullivan, 947 F.2d 341, 345-47 (9th Cir. 1991).

An ALJ may properly consider "testimony from physicians . . . concerning the nature, severity, and effect of the symptoms of which [claimant] complains," and may properly rely on inconsistencies between claimant's testimony and claimant's conduct and daily activities. See, e.g., Thomas, 278 F.3d at 958-59 (citation omitted).  An ALJ also may consider "[t]he nature, location, onset, duration, frequency, radiation, and intensity" of any pain or other symptoms; "[p]recipitating and aggravating factors"; "[t]ype, dosage, effectiveness, and adverse side-effects of any medication"; "[t]reatment, other than medication"; "[f]unctional restrictions"; "[t]he claimant's daily activities"; "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment"; and "ordinary techniques of credibility evaluation," in assessing the credibility of the allegedly disabling subjective symptoms. Bunnell, 947 F.2d at 346-47; see also Soc. Sec. Ruling 96-7p; 20 C.F.R. 404.1529 (2005); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ may properly rely on plaintiff's daily activities, and on conflict between claimant's testimony of subjective complaints and objective medical evidence in the record); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ may properly rely on weak objective support, lack of treatment, daily activities inconsistent with total disability, and helpful medication); Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ may properly rely on the fact that only conservative treatment had been prescribed); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ may

properly rely on claimant's daily activities and the lack of side effects from prescribed medication).

### 2. Analysis.

Plaintiff testified he cannot work because he suffers from dizziness, headaches, back pains, elbow pains, and difficulty with his kidneys, having to use the restroom almost every hour, and that he was told to do a little exercise by his physicians. (Id. at 14.) He alleged he can sit about twenty minutes before changing position; stand for about twenty minutes; walk about one hundred feet; and has lost some strength in his hands. (Id. at 15.)

After reviewing the record, the Court finds that the ALJ, who read and considered all the medical evidence of record in order to view the record in the light most favorable to Plaintiff (AR at 15), provided clear and convincing reasons for discounting Plaintiff's subjective complaints.

In determining Plaintiff was not entirely credible, the ALJ set forth several reasons. (Id. at 14-18.) The ALJ noted that Plaintiff was unable to provide any limitations imposed by his doctors. (Id. at 14.) The ALJ also noted that Plaintiff's medication was helpful and, other than some itchiness, he does not experience side effects. (Id. at 14-15.) Moreover, the medication minimizes Plaintiff's gout attacks, helps in relieving pain, and stops the swelling. (Id.) With regard to Plaintiff's activities, the ALJ commented on Plaintiff's daily gardening, which involves trimming his trees; bathing; dressing; washing dishes; helping with laundry; cooking; sweeping; carrying groceries; walking; exercising on the treadmill; and driving at least once or twice a week. The ALJ noted that many of these activities involved the same sorts of abilities necessary for obtaining and maintaining employment, and Plaintiff's participation in those activities tended to undermine his claim of disabling functional limitations. (Id. at 15.) The ALJ also noted that in his Pain Questionnaire, Plaintiff only mentioned needing help with lifting when he was lifting heavy objects such as furniture and appliances, in

contrast to his testimony that he has problems lifting much lighter objects, suggesting his lifting limitations "are not as severe as he purported." (Id.) The ALJ also factored in Plaintiff's application for unemployment compensation wherein he had to certify that he was "physically and mentally able, willing, and available to work, which is inconsistent with a claim for disability." (Id.) Plaintiff's search for work also suggested to the ALJ that Plaintiff's symptoms were not as severe as reported. (Id.) The ALJ also noted that Plaintiff stopped working for reasons not related to his allegedly disabling impairments. (Id.) Finally, the ALJ noted the lack of medical evidence to support the severity of Plaintiff's claimed limitations.[5] (Id.) These factors considered by the ALJ were all valid and supported by the record.

Accordingly, the Court finds that the ALJ provided clear and convincing reasons for finding Plaintiff's subjective complaints of impairment less than credible. See, e.g., Bunnell, 947 F.2d at 346-47; Morgan, 169 F.3d at 600 (9th Cir. 1999) (ALJ may properly rely on conflict between claimant's testimony of subjective complaints and objective medical evidence in the record); Tidwell, 161 F.3d at 602 (9th Cir. 1998) (ALJ may properly rely on weak objective support, lack of treatment, daily activities inconsistent with total disability, and helpful medication); Johnson, 60 F.3d at 1434 (ALJ may properly rely on inconsistencies in the Plaintiff's testimony).

Based on the foregoing, the Court finds the ALJ's credibility finding was supported by substantial evidence and was sufficiently specific to permit the Court to conclude that the ALJ did not arbitrarily discredit Plaintiff's subjective

---

[5] To the extent the ALJ relied on the fact that the objective medical evidence does not support Plaintiff's alleged severity of symptoms, although a lack of objective medical evidence may not be the sole reason for discounting a plaintiff's credibility, it is nonetheless a legitimate and relevant factor to be considered. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

testimony.  Thus, there was no error.

## IV.
## **ORDER**

Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

Dated: January 16, 2013

HONORABLE OSWALD PARADA
United States Magistrate Judge

13